**WILENCHIK & BARTNESS**
— A PROFESSIONAL CORPORATION —

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona 85004

Telephone: 602-606-2810    Facsimile: 602-606-2811

Dennis I. Wilenchik, #005350
Nicholas W. Merritt, #037770
admin@wb-law.com
*Attorneys for Defendant Adam Weinstein*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Adam Weinstein, et al.<br><br>Defendants. | Case No. 2:25-cr-00541-PHX-DJH<br><br>***CORRECTED* MOTION TO RELEASE GRAND JURY TRANSCRIPTS** |

Defendant Adam Weinstein, by and through undersigned counsel, hereby moves the court to order the disclosure of the grand jury transcripts. This Motion is supported by the following Memorandum of Points and Authorities.

**RESPECTFULLY SUBMITTED** on May 28, 2025.

**WILENCHIK & BARTNESS, P.C.**

 /s/ *Dennis I. WIlenchik*
Dennis I. Wilenchik, Esq.
Nicholas W. Merritt
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com
*Attorneys for Defendant*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

These baseless, bogus criminal allegations are based upon a series of civil lawsuits that are equally meritless. Claimant AWS Opportunity Funds I, LLC asserts claims against Respondents Block F Investors, LLC and The Gadsden Company, LLC for fraudulent and negligent misrepresentation, conversion, unjust enrichment, promissory estoppel, breach of the implied covenant of good faith and fair dealing, and actual fraudulent transfers under A.R.S. § 44-1004(A)(1). The arbitrator noted that AWS's causes of action do not include a claim for express breach of contract, as such a claim does not require a determination of "Cause" under the Block F operating agreement and is outside the scope of the agreement's mandatory arbitration clause. AWS pursued an express breach of contract claim against Block F in the pending Pima County Superior Court action.

During the three-day arbitration hearing, AWS attempted to portray Gadsden and its managers, Adam Weinstein and Jerry Dixon, as fraudsters who deceived Allen Sands into causing AWS to invest $3,375,286 in Block F and sign the company's operating agreement. AWS Opportunity Funds I, LLC asserts that Gadsden made four false representations, which AWS relied upon in signing the Block F operating agreement:

1. The Block F Project would be a 50/50 joint venture, with Gadsden contributing $2.310 million in land and $1,065,286 in cash for its 50% interest.
2. The AWS Contribution would be used for development/construction costs based on the Development Proforma.
3. Gadsden would commence development upon receipt of the AWS Contribution, including retaining architects, engineers, and contractors.
4. Block F would qualify as a QOZ Business or Fund, ensuring AWS would receive Opportunity Zone Fund tax deferral benefits and cash flow from the completed Project.

These representations, even if proven, are merely promises of future conduct and do not involve presently existing facts. Thus, they cannot support a negligent misrepresentation claim,

2

much less a criminal prosecution. AWS's claim fails due to lack of proof that Gadsden or Block F provided false information about a presently existing fact.

Further, Weinstein never stated that Block F would be a 50/50 joint venture, despite the baseless allegations made in the civil case. He only proposed it. This proposal was modified with AWS's knowledge and consent before signing the Block F operating agreement. Exhibit A of the agreement specified that Gadsden would contribute land valued at $2,310,000 plus a future cash contribution of $1,065,286. It also stated that **if** Gadsden did not make the cash contribution, the membership units would be adjusted accordingly. Gadsden never promised to make the future cash contribution absolutely. The agreement allowed Gadsden to forego the cash contribution, with an adjustment to membership units if it did not contribute. AWS did not prove that Gadsden made an affirmative representation that it would contribute $1,065,286 in cash with the present intent not to perform. The agreement did not specify a timetable for the cash contribution and left open the possibility that Gadsden might not make it. It is undisputed that Gadsden did contribute the land to Block F.

Even if these allegations were true, AWS failed to perform its own due diligence, despite being represented by no less than four lawyers during the negation of this deal. AWS claimed to be unaware that the property was encumbered, but Messrs. Weinstein and Dixon informed AWS representatives that it was encumbered and the encumbrance was recorded with the Pima County Recorder's Office. Further, Mr. Sands, the alleged victim testified that he had been involved in the construction and real estate development industry for over 40 years and completed approximately 145 projects, yet plays the role of a swindled babe. In reality, Mr. Sands is a wolf in sheep's clothing. If Mr. Sands did in fact believe that the subject property was unencumbered, it was due to his own negligence and willful blindness.

AWS failed to prove that Gadsden intended to harm AWS, engaged in wrongful conduct motivated by spite or ill will, or knew its actions created an unreasonable risk of physical harm and consciously disregarded that risk at arbitration. AWS cites no evidence in its closing brief to demonstrate Gadsden intended to cause injury or harm, acted out of spite or ill will, or consciously

disregarded an unreasonable risk of physical harm. Instead, AWS argues Gadsden's motives were to use AWS's money to clear mounting liabilities and then blame the failure of the Project on extrinsic factors, chalking it up as a poor investment or shifting market conditions.

AWS asserts that Gadsden and Block F converted the money AWS deposited in Block F's checking account as its capital contribution. AWS claims the conversion occurred when Block F transferred the funds to Gadsden. However, no evidence shows AWS had the right to immediate possession of the money at the time of the alleged conversion. Sands admitted at the arbitration hearing that once AWS wired the funds to Block F's bank account, Block F owned the funds. AWS no longer had any right to immediate possession of the money.

Finally, Gasden offered to fully repay AWS. This offer was rejected. What type of conniving fraudster offers to repay the funds allegedly stolen? None. Messrs. Dixon and Weinstein offered to repay these funds, not because they were stolen or fraudulently obtained, but because AWS sought to back out of the agreement and demanded a return of its investment, clearly pretextual as AWS rejected Gasden's offer to refund the Claimant's investment.

Despite the Arbitrator's award, AWS failed to prove each element of its seven claims against Block F and Gadsden at arbitration. Thus, the arbitrator should have denied all of AWS's claims against Block F and Gadsden and refuse to award AWS its attorney's fees and costs; however, the arbitrator wrongfully ruled in favor the AWS. Unfortunately, there is not an opportunity to appeal this wrongful decision. Now at the likely behest of two former United States Attorneys who joined the law firm of Dorsey and Whitney, who represented AWS in the underlying civil litigation. This same firm is representing another entity controlled by Mr. Sands in the *Monier* matter, a highly related case regarding a different property developed by Gasden.[1] This should be a civil matter, but due to the potentially untoward relationship between Dorsey and Whitney and the United States Attorney's Office for the District of Arizona, our clients must

---

[1] Despite being fully compensated for his investment with interest, Mr. Sands and IB New Ventures brings a frivolous suit for no other purpose than to harass Messrs. Dixon and Weinstein, just as there is no other purpose for this bogus, unethical criminal prosecution.

defend themselves against these baseless criminal allegations. This should be a civil breach of contract, not an unethical criminal probe enacting retribution on behalf of a civil litigant.

## II. LAW AND ARGUMENT

"A trial court unquestionably has the power, under Rule 6(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., to order grand jury proceedings transcribed and produced for inspection by the defendant but such power should be exercised only where there is a clear showing that the ends of justice require it." *Herzog v. United States*, 226 F.2d 561, 567 (9th Cir. 1955), *adhered to on reh'g,* 235 F.2d 664 (9th Cir. 1956). See also *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 240 (1940) ("after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it"). "[D]isclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." *Dennis v. United States,* 384 U.S. 855, 870 (1966).

"The burden…, is on the defense to show that 'a particularized need' exists for the minutes which outweighs the policy of secrecy." *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 400 (1959). The District Court must lift the secrecy of grand jury proceedings when the material will prevent a possible injustice, the need for disclosure outweighs the need for continued secrecy, and only the relevant parts of the transcripts are disclosed. These standards are imperative to ensure justice is served and secrecy is maintained only where absolutely necessary. *United States v. Plummer*, 941 F.2d 799, 806 (9th Cir. 1991) citing *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222 (1979). "When the defense shows a particularized need for grand jury transcripts that outweighs the need for secrecy, the trial judge's function is reduced to eliminating only extraneous material or issuing protective orders in unusual situations." *Id,* citing *Dennis,* 384 U.S. 855, 875. The Supreme Court has "stated that 'problems concerning the use of the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility * * *' are 'cases of particularized need where the secrecy of the proceedings is lifted

5

discretely and limitedly.' *Dennis,* 384 U.S. 855, 870 quoting *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 400, 405 (1959).

      a. Minimal Secrecy requirements

The need for grand jury secrecy is "reduced" but "not eliminated" once the grand jury has concluded its activities. *Douglas Oil Co. of California,* 441 U.S. 211, 222 (1979). "It is equally clear that as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." *Id,* at 223.

Here, the need for disclosure in this case outweighs the need for continued secrecy. The grand jury's activities in this case have concluded, reducing the need for continued secrecy. This need is further reduced by the fact that the witnesses have already likely testified in the underlying civil matters or the upcoming civil matter in the *Monier* case. AWS claims conversion of funds deposited in Block F's checking account, but no evidence in the arbitration showed that AWS had the right to immediate possession of the money at the time of alleged conversion. Sands admitted that once AWS wired funds to Block F's bank account, Block F owned them. Gadsden offered to refund AWS' investment, which was rejected. This offer was not from a fraudster but from parties seeking to resolve the dispute. It is unclear if this exculpatory evidence was presented to the grand jury with the grand jury. The grand jury transcripts are crucial for Messrs. Weinstein and Dixon to demonstrate the truth and prevent injustice. The policy of secrecy must yield to the need for transparency in this instance.

      b. The grand jury transcripts will avoid possible injustice

Messrs. Weinstein and Dixon demonstrate a clear need for the grand jury transcripts to prevent a possible injustice, particularly due to concerns of prosecutorial misconduct. Even the appearance of prosecutorial misconduct can severely undermine the fairness of grand jury proceedings, leading to unjust outcomes and undermining faith in the criminal justice system. See *Young v. U.S. ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 811 (1987) "We may require a stronger showing for a prosecutor than a judge in order to conclude that a conflict of interest exists. Once we have drawn that conclusion, however, we have deemed the prosecutor subject to influences

that undermine confidence that a prosecution can be conducted in disinterested fashion. If this is the case, we cannot have confidence in a proceeding in which this officer plays the critical role of preparing and presenting the case for the defendant's guilt"). See also *State v. Arias*, 248 Ariz. 546, 462 P.3d 1051 (Ct. App. 2020), *as amended* (Apr. 21, 2020) (Jones, J. concurring) (citations omitted) ("The State's attorney in a criminal case is held to a higher standard; in his role as 'a minister of justice' and 'spokesperson for the state, an entity whose goal is to see justice done,' a prosecutor has a 'specific obligation[ ] to see that the defendant is accorded procedural justice, [and] that guilt is decided upon the basis of sufficient evidence,' rather than bias or prejudice"). Given the appearance of impropriety and high likelihood of this prosecution being brought as an illicit favor to two former federal prosecutors employed by Dorsey and Whitney, these transcripts are clearly necessary to avoid possible injustice.

Even if there were no illicit favors being exchanged in this case, albeit unlikely, the transcripts would be necessary to prevent injustice in the *Monier* matter, a highly related civil case. See *Douglas Oil Co. of California,* 441 U.S. at 211 (1979)(citing *United States v. Procter & Gamble Co.,* 356 U.S. 677 (1958)("parties seeking grand jury transcripts must show that the material sought is needed to avoid a possible injustice in another judicial proceeding").

c. Scope of Request

Messrs. Weinstein and Dixon simply request that the relevant portions of the grand jury proceedings be disclosed. See *United States v. Plummer*, 941 F.2d 799, 806 (9th Cir. 1991)("[O]nly the relevant parts of the transcripts should be disclosed). Messrs. Weinstein and Dixon seek only the relevant parts of the grand jury transcripts necessary to support its claims. This targeted request ensures that the disclosure is limited and precise, addressing only the material that directly impacts the case, such as the need to impeach witnesses and to test their credibility. The scope of the transcript should be limited to witnesses who the prosecution may call as potential witnesses at trial and the individuals who testified at depositions or will likely testify in the underlying civil cases. By focusing on the pertinent sections, the court can maintain the integrity of grand jury secrecy while allowing AWS to access the information needed to

substantiate its claims. This approach balances the need for justice with the policy of confidentiality.

### III.    CONCLUSION

Messrs. Dixon and Weinstein have shown a particularized need for the release of grand jury transcripts to avoid injustice and ensure a fair trial. The need for disclosure outweighs the policy of maintaining grand jury secrecy. The request is specific and covers only the material necessary to support AWS's claims. Therefore, the court should grant the motion for the release of grand jury transcripts.

**RESPECTFULLY SUBMITTED** on May 28, 2025.

**WILENCHIK & BARTNESS, P.C.**

*/s/ Dennis I. Wilenchik*
Dennis I. Wilenchik, Esq.
Nicholas W. Merritt, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2025, I electronically filed the forgoing document with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all registered CM/ECF participants in this case. I also sent the foregoing document to the following via email as follows:

Timothy Courchaine
United States Attorney
District of Arizona
Kevin M. Rapp
Assistant United States Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, AZ 85004
kevin.rapp@usdoj.gov
*Attorneys for Plaintiff*

/s/ Alice Nossett