**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-25-00541-001-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Adam Weinstein, et al., | |
| Defendants. | |

Before the Court is Defendant Adam Weinstein's Motion to Release Grand Jury Transcripts (Doc. 52). The Government has filed a Response (Doc. 49) and the Defendant filed a Reply (Doc. 53). For the reasons stated herein, the Court denies the Defendant's Motion.

I. **Background**

Defendants Adam Weinstein and Gerald Dixon were both indicted by a federal grand jury on April 8, 2025, of Conspiracy to Commit Wire Fraud (Count 1); Wire Fraud (Count 2); Conspiracy to Commit Money Laundering (Count 3), and Transactional Money Laundering (Count 4 through 20). The Indictment states that Defendant Weinstein as President and CEO of the Gadsen company, and Defendant Dixon, as owner and Chairman of Gadsden, conspired to defraud victim K.S. to "invest" funds from a bank account in Minnesota to one that the Defendants controlled in Tucson, Arizona. (Doc. 1). The Government alleges that the funds were "diverted for the purchase of the subject property (that it was agreed that the Defendants already owned free and clear)." (Doc. 49 at 2). In

addition, the Government alleges that the grand jury determined that Defendants diverted $1.1 million for expenditures unrelated to the subject property, including that Defendant Weinstein used the Gadsden Corporate American Express (AMEX) card on a $200,000.00 spending spree purchasing luxury items for himself and his family, including high-end luggage, hotels in New York and France, and that he "donated" $10,000.00 to the Tucson Museum of Contemporary Art to benefit his wife. (*Id*. at 3). The Government avers that these acts, among others, form the basis of the grand jury indictment.

Defendant Weinstein asks the Court to release the "Grand Jury transcripts" of proceedings resulting in his indictment. Defendant argues that the transcripts must be released because the information which the indictment was based upon is "baseless" and "meritless." (Doc. 52 at 2). Defendant alleges that the indictment is "based upon a series of civil lawsuits,"—including one involving AWS Opportunity Funds I, LLC ("AWS")—then lists numerous reasons why these civil claims fail and why the Arbiter erred in finding for AWS in that civil lawsuit. As best the Court can discern from his version of events in the arbitration, Defendant claims that these facts and arguments are exculpatory evidence that should have been presented to the grand jury, so, he wishes to see if it was.

Defendant also asserts that the indictment was sought "as an illicit favor to two former federal prosecutors employed by Dorsey and Whitney." (*Id*. at 7). Defendant claims that these former federal prosecutors now represent AWS in the aforementioned civil lawsuit resulting in the arbitration award against Gadsden. (*Id*. at 3–4).[1] So, they also need to examine the grand jury transcripts "due to concerns of prosecutorial misconduct." (*Id*. at 7). Defendant also states that given that "witnesses have already likely testified in the underlying civil matters or the upcoming civil matter in the *Monier* case," the veil of grand jury secrecy is reduced. (*Id*.)

Defendant seeks disclosure of "only the relevant parts of the grand jury necessary to support its claim." But then he goes on to seek transcripts of "witnesses who the

---

[1] Defendant also states, without more, that "this same firm" represents another entity in a highly related case—"the *Monier* matter"—which involves other property developed by Gadsden. (*Id*. at 4).

- 2 -

prosecution may call as potential witnesses at trial and the individuals who testified at depositions or will likely testify in the underlying civil cases." (*Id*. at 7–8). The Government responds that the Defendant has failed to meet his burden of demonstrating the particularized need for grand jury material. (Doc. 49 at 6). It states that Defendant's Motion "relies upon speculative factual omissions or misstatements before the Grand Jury" which are theoretical and speculative. (*Id*. at 6–7). The Court agrees.

**II.     Law and Analysis**

Grand Jury proceedings are held, presumptively and traditionally, secret. *See* Fed. R. Crim. p. 6(e)(3)(F)(4)–(5). And determining whether to grant a request for grand jury information is within the discretion of the Court. *See United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986). A Court may authorize disclosure of a grand jury matter "at the request of a defendant" who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury. Fed. R. Crim. P. 6(e)(3)(E)(ii). However, disclosure is only appropriate where a defendant shows a "particularized need exits which outweighs the policy of secrecy." *Id*. (quoting *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959). This standard of particularized need is narrowly applied to ensure that only relevant grand jury testimony is made available to defense counsel. *See United States v. Kim.* 577 F.2d 473, 478 (9th Cir. 1978). Disclosure is only warranted when a party shows that they seek material only to avoid a possible injustice in another judicial proceeding and that the need for disclosure is greater than the need for continued secrecy. *See Douglas Oil Co. of Cal. v. Petrol Stops N.W*., 441 U.S. 211, 219–22 (1979). The importance of secrecy in grand jury proceedings extends to the effect on future grand juries, not just the particular grand jury involved. And when disclosure is permitted, it is to be done 'discretely and limitedly.' *United States v. Procter & Gamble Co*., 356 U.S. 677, 681 (1958).

Defendant's Motion seeks broad swaths of grand jury information. He has not made, or event attempted to make, a particularized showing that disclosure is warranted. First, he iterates a list of defenses to related civil cases, seeming to assert that these defenses provide exculpatory evidence that should or could have been considered by the federal

grand jury. So, he wishes to see the grand jury transcripts of "witnesses who the prosecution may call as potential witnesses at trial and the individuals who testified at depositions or will likely testify in the underlying civil cases" without providing the names of these witnesses or the presumed content of their testimony and how such testimony is exculpatory to the allegations in the indictment.[2]  Next, Defendant asserts that because a party in a related civil case is represented by a former Assistant U.S. Attorney, the indictment was sought as "as an illicit favor," so prosecutorial misconduct is afoot.  Yet, he offers nothing more than this conclusory assertion in support of unsealing the grand jury's transcript to see if he can glean support for this allegation.

Courts in civil actions have refused to permit pretrial disclosure of an entire grand jury transcript where the sole basis for discovery was that the transcript had been available to the Government in preparation of its case.  *See e.g.*, *Procter & Gamble,* 356 U.S. at 681.  In *Pittsburgh Plate Glass Co. v. United States,* the Supreme Court approved of a trial court's refusal to disclose a witness's grand jury testimony because the defense made no showing of need, only an insistence that he was entitled to it as a matter of right.  360 U.S. at 400.  Here, Defendant's Motion makes similar assertions.  And without more, this Court is loath to lift the veil of secrecy that the federal grand jury proceeding is entitled to.

Accordingly,

**IT IS ORDERED denying** Defendant Adam Weinstein's Motion to Release Grand Jury Transcripts (Doc. 52).

Dated this 8th day of July, 2025.

Honorable Diane J. Humetewa
United States District Judge

---

[2] The Court does not here state that the grand jury testimony of an eventual testifying witness may not be relevant for other reasons.